UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| ARLIE HALCOMB, | No. 2:14-cv-02796-MCE-KJN |
|---|---|
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| CITY OF SACRAMENTO; JUSTIN BROWN, PAUL FONG, ANDREW LEAL, and Does 1 to 50, inclusive, | |
| Defendants. | |

    Through the present lawsuit, Plaintiff Arlie Halcomb ("Plaintiff") alleges eleven claims against Defendant City of Sacramento and three of its police officers, Defendants Justin Brown, Paul Fong and Andrew Leal.  Each claim stems from actions taken by Defendants in attempting to serve a felony bench warrant on August 8, 2014.  Plaintiff's operative pleading, the Second Amended Complaint ("SAC") includes two claims brought against the City of Sacramento for municipal liability under 42 U.S.C. § 1983.  The Fourth Claim charges the City with constitutional violations predicated on an unlawful policy, custom or practice and the Fifth Claim alleges a failure to adequately train or supervise its police officers.

///

///

1

Defendant City ("Defendant") now moves to dismiss both of those claims under Federal Rule of Civil Procedure 12(b)(6)[1] for failure to state a claim upon which relief can be granted.[2] For the reasons set forth below, that Motion is DENIED.[3]

## BACKGROUND[4]

According to his SAC, Plaintiff was awakened by his fiancée, Christina Bernal, at about midnight on August 8, 2014.  Ms. Bernal told Plaintiff that someone was trying to break into their second floor apartment.  When Plaintiff went to the front window and drew the curtain back, he saw several persons attempting to wrench the window from its track.  Ultimately, those persons identified themselves as police officers and claimed they had a warrant.  After officers threatened to kick in the front door, Plaintiff opened it and was taken into custody. According to Plaintiff, in the process of being handcuffed he was roughly "grabbed" by the officers who proceeded to twist his right arm and shoulder behind his back and up to his neck.  Plaintiff claims he was then thrown onto his couch with such force that the center support was broken.

When the officers asked for "Rosa Davalos," Plaintiff claims he told them that Ms. Davalos lived in the neighboring unit as clearly labeled on the mailbox.[5]  Despite being informed that the officers had entered the wrong residence, Plaintiff claimed they

---

[1] All further references to "Rule" or "Rules" are to the Federal Code of Civil Procedure unless otherwise noted.

[2] While Defendant Officers Brown, Leal and Fong were initially named as moving parties to the Motion, Defendant's Reply confirms that they have withdrawn that participation and have since filed an answer to the SAC. ECF No. 38.

[3] Having determined that oral argument would not be of material assistance, the Court ordered this Motion submitted on the briefing in accordance with Local Rule 230(g).

[4] The facts in this section are drawn, in some cases verbatim, from the allegations as set forth in Plaintiffs' First Amended Complaint.

[5] The SAC avers that when the officers did knock on Ms. Davalos' door there was no answer inasmuch as she was at the hospital giving birth.

remained at his apartment for almost an hour and ran identification checks for warrants on both Plaintiff and his fiancée.

As indicated above, Plaintiff claims that the City's indiscriminate policy permitting officers to conduct an identification check on anyone with whom police officers come into contact violates the Fourth and Fourteenth Amendments of the United States Constitution through 42 U.S.C. § 1983. Plaintiff further contends that Defendant's policy permitting warrants to be served at outdated addresses points to similar violations, as does Defendant's failure to train its officers to avoid such practices.

In moving for dismissal of Plaintiff's municipal liability claims, Defendant alleges Plaintiff has failed to identify facts pointing to any constitutional deprivation. The SAC nonetheless makes the following allegations in its Fourth Claim which charges Defendant with maintaining a policy, custom or practice permitting its police officers to both run warrant checks on any encountered individual and to allow attempted service of warrants at demonstrably wrong addresses:

> 42. Defendant CITY OF SACRAMENTO maintained and/or acquiesced to a policy, custom or practice permitting its police officers to (1) conduct a warrant check on every person questioned, detained, and/or arrested, where identifying information was obtained by police officers from the person contacted; and (2) conduct [??] attempted services of warrants at addresses without the requisite "reason to believe" (i.e., probable cause) that the suspect was located at the address where the warrant was served.
>
> 43. Defendants BROWN AND FONG have testified, under oath, that they acted pursuant to the above-described policy, custom or practice in connection with the instant matter, as well as numerous other incidents in the course of their careers as police officers employed by CITY OF SACRAMENTO. Specifically, Defendants Brown and Fong testified that 1) they conduct warrant searches on nearly every single person they receive identifying information from; and (2) that they have attempted to serve warrants at incorrect/outdated addresses in the past. Defendant BROWN testified that he assumes, without any personal "reason to believe," that the information obtained by another police officer attempting to serve an arrest warrant is correct and lawful. Defendant BROWN testified that he is aware of and has personally been involved in several attempts to serve warrants that were conducted at the incorrect/outdated addresses. Defendant FONG testified that he relies on

3

>address information obtained from various and sometimes unknown sources for the purpose of obtaining arrest warrant service addresses. Defendant FONG testified that there is no policy or guideline as to the staleness of address information on which he relies when obtaining addresses for service of arrest warrants. Defendant FONG testified that he is aware of and has personally been involved in several attempts to serve warrants that were conducted at the incorrect/outdated addresses.
>
>44. Defendant CITY OF SACRAMENTO was deliberately indifferent to the existence of the policy, custom, or practice described above.
>
>45. Defendant CITY OF SACRAMENTO's policy, custom or practice was the moving force behind constitutional violations experienced by Plaintiff herein, because it (1) caused the unreasonably prolonged arrest/detention of Plaintiff; and (2) caused Defendants BROWN, FONG, and LEAL to attempt service of the Davalos arrest warrant at an address that they did not have a "reason to believe" Davalos was located at.

Pl.'s SAC, ECF No. 36, ¶¶ 42-45.

Additionally, Plaintiff Fifth Claim alleges a failure to adequately train or supervise against the City, making the following additional averments:

>47. Defendant CITY OF SACRAMENTO failed to adequately train or supervise its police officers with regard to (1) when it is lawful to question, detain, and/or arrest a suspect for the purpose of conducting a warrant check; and (2) how to obtain information constituting "reason to believe" (i.e., probable cause) that a suspect is located at an address, prior to an attempt to serve a warrant.

Id. at ¶ 47.

Plaintiff alleges that these contentions, taken together, are more than sufficient to state a claim against Defendant under both theories.

## STANDARD

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38

(9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

      Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief."  Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing Wright & Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

///

///

**ANALYSIS**

A.  **Plaintiff's Fourth Claim**

A municipality may be liable under 42 U.S.C. § 1983 if a plaintiff can show that "action pursuant to official municipal policy" caused his or her injury. Connick v. Thompson, 563 U.S. 51, 60-61 (2011); Monell v. Dep't of Social Servs., 436 U.S. 658, 691(1978).  To make that showing, a plaintiff must establish that: (1) he was deprived of his or her constitutional rights by the municipal entity and its employees acting under color of state law; (2) the defendants have customs or policies which demonstrate a conscious or deliberate disregard for constitutional rights; and (3) those policies were the driving force behind the alleged deprivation of the plaintiff's rights.  Gant v. County of Los Angeles, 772 F.3d 608, 617 (9th Cir. 2014).  Customs and policies include not only written rules and codes of conduct, but also "widespread and longstanding practice that 'constitutes the standard operating procedure of the local government entity.'" Young. v. City of Visalia, 687 F. Supp. 2d 1141, 1147-48 (E.D. Cal. 2009) (quoting Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).  "A policy can be one of action or inaction." Fairley v. Luman, 281 F.3d 913, 918 (9th Cir. 2002) (internal citations omitted).

With respect to Plaintiff's claim that Defendant had a policy of permitting unfettered warrant checks, Defendant claims that Plaintiff has failed to allege sufficient facts to establish that such a policy existed, and indeed points to nothing supporting his claim beyond the single incident in which he was involved.  Defendant makes similar claims in challenging that any custom, practice or policy existed that condoned the service of warrants at bad addresses.

Defendant attempts to hold Plaintiff, however, to a higher standard than required at this stage of the proceeding.  While Plaintiff must provide fair notice of the claims it asserts under an Iqbal/Twombly analysis, in the context of municipal liability it would be rare if a plaintiff had access to the existence or absence of internal policies prior to discovery.  Accordingly, as one court has noted, "only minimal factual allegations should

be required at the motion to dismiss stage. Moreover, those allegations need not specifically state what the policy is, as the plaintiff will generally not have access to it, but may be more general." Thomas v. City of Galveston, 800 F. Supp. 2d 826, 842-843 (S.D. Tex. 2011). A plaintiff need only identify the policy/custom in question and explain how it was deficient, and how constitutional injury was likely to occur and did injure plaintiff. Young v. City of Visalia, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009).

      Here, Plaintiff has alleged a policy of indiscriminate and unjustified warrant checks on virtually every individual providing identifying information. As Officer Brown testified at deposition, "[f]or the last 13 years in policy work, I have run warrant checks on every person I come into contact with." Brown Dep., Ex. A to Decl. of Mark Merin, 51:6-8.[6] Brown goes on to describe this as both a "practice" and "normal procedure." Id. at 53:6-12. These allegations certainly transcend mere "isolated or sporadic incidents." Moreover, Plaintiff claims that he was detained for almost an hour despite informing Defendant Officers that they had entered the wrong house, apparently so that they could run warrant checks on Plaintiff and his fiancée who had nothing to do with the subject of the arrest warrant, Ms. Davalos. SAC, ¶¶ 17-19. This allegedly prolonged detention, which Plaintiff claims was without reasonable cause, is sufficient to identify for pleading purposes a requisite constitutional injury, as well as potential municipal liability, given Defendant Officers' claim that the warrant checks made during the detention were made pursuant to both "practice" and "normal procedure."

      With respect to serving warrants at outdated addresses, the SAC also alleges that both Officers Brown and Fong had been involved in attempts to serve warrants at incorrect addresses in the past. Officer Fong testified at deposition that this had literally happened on "hundreds" of occasions. Fong Dep., Ex. B to Merin Decl., 64:2-6. Fong

---

[6] Although external evidence is not generally considered on a motion to dismiss, the SAC relies on the deposition transcripts of Defendant Officers Brown and Fong in explaining that those Defendants "testified, under oath, to the factual allegations as set forth in the SAC, SAC, 5:28-6:14. When Plaintiff sought permission to file his SAC, he explained that he could not cite to the formal transcripts because they had not yet been prepared. See Pl.'s Mot. to Amend, ECF No. 30, 14:23-25. Because the SAC relies on the transcripts and because their authenticity is not contested, they can properly be considered in the context of this Rule 12(b)(6) Motion. See Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

further testified that there is no policy delineating how recent address information must be for purposes of serving a warrant. Id. at 30:9-31:16.  Again, given the harm Plaintiff claims resulted when his apartment was targeted incorrectly (which includes both personal injuries as property damage as described above), the allegations contained in the SAC, taken as a whole, are more than enough to survive Defendant's claim that Plaintiff has not sufficiently identified an actionable policy or lack thereof.   Any challenge as to the validity of those claims goes beyond the purview of a motion to dismiss, since the contentions made by way of the SAC must be taken as true and construed in the light most favorable to Plaintiff. See Lee v. City of Los Angeles, 250 F.3d at 688.  To the extent Defendant takes issues with the validity of those contentions, those challenges are factual in nature and have no bearing on the legal sufficiency of the SAC for purposes of Rule 12(b)(6). Id.

In sum, the Court concludes that Plaintiff has stated a viable cause of action under his Fourth Claim which alleges liability on Defendant's part based on policy, custom or practice.  That portion of Defendant's Motion is accordingly denied.

### B. Plaintiff's Fifth Claim

"A plaintiff alleging a failure to train claim must show that: (1) he was deprived of a constitutional right, (2) the municipality had a training policy that 'amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its police officers] are likely to come into contact'; and (3) his constitutional injury would have been avoided had the municipality properly trained those officers." Young v. City of Visalia, 687 F. Supp. 2d at 1148 (quoting Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007).  "[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 390 (1989).

///

The Court's conclusion that Plaintiff has sufficiently stated claims against Defendant based on "custom, policy or practice," as set forth above, causes it to similarly conclude that Plaintiff can allege an actionable failure to train based on those same factors. Plaintiff's Fifth Claim therefore survives Defendant's Motion to Dismiss as well. As Plaintiff points out, at the very least a fuller factual record is needed to determine the viability of any claim based on failure to train, and that inquiry cannot be made in the context of the present motion.

## CONCLUSION

For all the reasons set forth above, Defendant's Motion to Dismiss Plaintiff's SAC (ECF No. 37) is DENIED.

IT IS SO ORDERED.

Dated:  June 20, 2016

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE